In this case it is not disputed but that the rate fixed by the defendants, and which they ask the plaintiffs to pay, is a fair and reasonable rate for the services to be rendered, and the fact that they have made, or propose to make, with one individual what is less than the fair and reasonable rate for the service is no reason why a court of equity should take out of the hands of the carriers the power to regulate their business, and to receive from those asking for the service such fair and reasonable rate as they have established, and require all to pay equally alike. I think the reasoning in the case of *Steamship Co.* v. *McGregor*, referred to by the presiding justice, is conclusive, upon the question presented by this appeal, in favor of the view contended for by appellants.

<hr />

## LOEWENSTEIN *v.* MYERS, Comptroller.

*(Supreme Court, General Term, First Department. November 18, 1892.)*

1. PUBLIC MARKETS—REASONABLE RULE.
      A rule prohibiting the slaughter of poultry at the public markets in New York city is reasonable.
2. SAME—BOARD OF HEALTH.
      The board of health of New York city, having supreme power in all matters affecting the public health, does not affect the authority of the comptroller, who has charge of the public markets, to make reasonable rules forbidding practices which are detrimental to the public health.

Appeal from special term, New York county.

Petition by Abraham Loewenstein against Theodore W. Myers, as comptroller of the city and county of New York, for an injunction. A temporary injunction was granted, and afterwards dissolved. From the order dissolving the injunction, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and O'BRIEN and BARRETT, JJ.

*Samuel Strasbouger*, for appellant. *William H. Clark*, (*George L. Sterling*, of counsel,) for respondent.

BARRETT, J. The comptroller is authorized by law, for good and sufficient cause, to revoke any permit for the occupancy of stalls or stands in the public markets of this city. Consolidation Act 1882, § 125, subd. 1. By this section, the management of the markets is intrusted to the comptroller, and such management certainly implies authority to make reasonable rules and regulations for the proper use of such stalls or stands. In the present case, the plaintiff accepted a permit containing a stipulation that in the use and occupancy of such stands he should be governed by and obey the ordinances, rules, and regulations now established or to be hereafter established for the management of the public markets." He also signed an agreement "to strictly conform to all regulations as may from time to time be issued;" and, further, his permit was limited to occupancy "only as stands for the sale of live and dressed poultry." He now insists that he has further right to slaughter poultry at his stand, but in support of this claim he furnishes no written agreement or permit, and his allegation of a presumably verbal agreement is explicitly denied. It is clear that the comptroller was authorized to prohibit the slaughtering of poultry in the public markets, and that a rule or regulation to that effect was a reasonable exercise of his power of general management. Independent of any question of health, it was competent for him to put a stop to such exhibitions if he deemed them offensive to the public and an improper use of the market. In the case at bar, the comptroller gives us the facts upon which he exercised his judgment, and we think they abundantly justified the rule which he promulgated. He says that much complaint had been made of the practice of thus publicly killing poultry, and that he had been frequently urged by reputable citizens, including the president of the board of health, to put a stop to it. He adds that a part of the market building is used for school purposes, and that the trustees of the board of education had also made complaint. He acted after careful consideration, and there has certainly been no capricious violation of the rights of stand owners. It is true that the powers of the board of health include the regulation and control of all public markets, so far as relates to the "cleanliness, ventilation, and drainage" thereof, (Laws 1882, § 538,) and that under these powers the board has undoubted authority to stop any practice which may injuriously affect the general healthfulness of the city. It is thus supreme in all matters relating to the public health, and it might even overrule the comptroller, should he authorize a dangerous use of the markets. Here, however, the comptroller has exercised his power simply to abate a nuisance which, revolting in itself, happens also to be detrimental to the public health. He is not for the latter reason ousted of his jurisdiction to prescribe reasonable rules for the decent use of the markets, and the plaintiff, who contracted for obedience to such rules, cannot well complain. We may add that the plaintiff seeks to extend his permit beyond its terms, and his position is therefore doubly untenable. The order appealed from should therefore be affirmed, with $10 costs and the disbursements of the appeal. All concur.